IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK A. MARTINEZ,

      Plaintiff,                No. 2:11-cv-0942 KJN P

    vs.

WARDEN TIM VIRGA, et al.,

      Defendants.            ORDER

                                  /

        Plaintiff is a state prisoner, presently housed at California State Prison - Sacramento, proceeding without counsel. Plaintiff consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Plaintiff's three motions for preliminary injunctive relief are now before the court. Plaintiff seeks a court order requiring defendants to reinstate plaintiff's prescription for Gabapentin, which plaintiff argues is needed to control his seizures. On May 6, 2011, the Deputy Attorney General filed a courtesy response. (Dkt. No. 14.) On May 16, 2011, plaintiff filed an untimely reply. (Dkt. No. 24.) As discussed more fully below, plaintiff's motions for injunctive relief are denied.

        On April 11, 2011, plaintiff filed a motion for permanent restraining order to prevent defendants from discontinuing plaintiff's seizure medication. (Dkt. No. 7.) Plaintiff provided medical records demonstrating that he suffers from a seizure disorder of unknown

1

etiology. (Dkt. No. 7 at 4.) Plaintiff contends that since defendants allegedly discontinued plaintiff's prescription for Gabapentin, plaintiff suffered seizures on March 16, 2011, and from March 18, 2011, through March 22, 2011. (Dkt. No. 7 at 1.) Plaintiff argues his seizures were previously under control when plaintiff was prescribed Gabapentin/Neurontin. (Dkt. No. 7 at 2.) Plaintiff's filing was signed April 7, 2011.

On April 26, 2011, plaintiff filed a motion for a preliminary injunction. (Dkt. No. 10.) Plaintiff claims he is an epileptic who suffers from grand mal seizures, and that his anti-seizure medication, Gabapentin/Neurontin, was discontinued. (Id.) Plaintiff alleges he has been suffering seizures and could "die." (Id.) Plaintiff provided a copy of a notice from the Prison Law Office concerning the placement of Gabapentin on the prison's non-formulary list, which "means the medicine can be prescribed only if [the] Primary Care Provider makes a special written request, and the request is then approved by the prison's chief doctor." (Dkt. No. 10 at 2.) This motion was signed on April 21, 2011. (Dkt. No. 10 at 4.)

On May 5, 2011, plaintiff filed a motion for a restraining order against defendant Eliva Mogahaddam. (Dkt. No. 13.) Plaintiff claims he has been suffering grand mal seizures, and states his last hospitalization was on April 24, 2011 for head trauma. (Dkt. No. 13 at 2.) In addition, plaintiff alleges Dr. Mogahaddam prescribed plaintiff Tylenol for plaintiff's pain, despite the fact that plaintiff suffers from Hepatitis-C. Plaintiff contends that doctors are "cautioned against ordering any person with the Hepatitis-C Virus Tylenol as Tylenol also attacks a person's liver." (Dkt. No. 13 at 2.) Plaintiff asks the court to order Dr. Mogahaddam to refrain from further harming plaintiff. (Id.) Plaintiff provides a copy of a medical record dated February 9, 2009, and signed by David Medina, PA-C, but there is no mention of a prescription for Tylenol in that record. (Id.)

In his reply, plaintiff contends that defendants have disregarded plaintiff's seizure disorder, and shown deliberate indifference by refusing to continue plaintiff's prescription for Gabapentin. (Dkt. No. 24 at 2.) Plaintiff contends that defendants have failed to act to prevent

plaintiff from continuing to suffer seizures. (<u>Id.</u> at 3.) Plaintiff contends he suffered a seizure on April 19, 2011, during which he sustained "head trauma/laceration." (Dkt. No. 24 at 7.)[1]

A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." <u>See</u> Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. <u>See</u> <u>generally</u>, Fed. R. Civ. P. 65; <u>see</u> <u>also</u>, E.D. Cal. L. R. ("Local Rule") 231(a). It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction.[2]

A preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1422 (9th Cir. 1984); <u>Gon v. First State Ins. Co.</u>, 871 F.2d 863 (9th Cir. 1989). A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it. <u>Dymo Indus. v. Tapeprinter, Inc.</u>, 326 F.2d 141, 143 (9th Cir. 1964). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting <u>Winter v. Natural Res. Def. Council, Inc</u>, 129 S.Ct. 365, 375-76 (2008). In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than

---

[1] Plaintiff's reply was not signed by plaintiff. (Dkt. No. 24.) Plaintiff is informed that all court filings must be signed. Fed. R. Civ. P. 11(a).

[2] <u>See</u>, e.g., <u>Aiello v. OneWest Bank</u>, 2010 WL 406092, *1 (E.D. Cal. 2010) (providing that "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions") (citations omitted).

necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

At the time plaintiff filed his first motion for injunctive relief, the court had not yet screened plaintiff's complaint. By order filed May 10, 2011, the court found plaintiff's complaint was vague and conclusory, dismissed the complaint, and granted plaintiff leave to file an amended complaint. On May 20, 2011, plaintiff filed a second amended complaint, which is pending screening. The gravamen of plaintiff's second amended complaint is that defendants are deliberately indifferent to plaintiff's serious medical needs based on their continued refusal to prescribe Gabapentin to plaintiff while he is housed at California State Prison, Sacramento. (Dkt. No. 30 at 3.) Plaintiff contends Gabapentin is necessary to control his seizures.

No defendant has been served with process at this early stage of the litigation. However, on May 6, 2011, the Supervising Deputy Attorney General provided a response to the court's April 25, 2011 order requesting information as to the current status of plaintiff's medical care for plaintiff's seizure disorder. E. Moghaddam, M.D., provided a declaration stating the following:

1. Dr. Moghaddam is a licensed physician, board-certified in the area of internal medicine. (Dkt. No. 14-1 at 1.)

2. Plaintiff is "seen regularly by health care staff and specifically has been seen on a number of occasions regarding his seizure disorder." (Dkt. No. 14-1 at 1.)

3. Dr. Moghaddam examined plaintiff on May 3, 2011, regarding plaintiff's seizure disorder, and noted that plaintiff was prescribed one 200 milligram tablet of Carbamazepine twice daily. (Dkt. No. 14-1 at 2.) Carbamazepine is an anticonvulsant drug that is used to treat epileptic seizures. (Id.)

4. Plaintiff has also been prescribed Trileptal, which is an anticonvulsant, or antiepiletic drug. (Id.) Trileptal works by decreasing nerve impulses that cause seizures. (Id.)

////

5. Dr. Moghaddam confirmed that Dr. Junia, plaintiff's Mental Health Psychiatrist, agrees that plaintiff will benefit from Trileptal in that the Trileptal will help plaintiff's psychiatric issues. (Id.) Dr. Junia recommends plaintiff take Trileptal as well. (Id.)

6. Plaintiff was previously prescribed Gabapentin to treat the seizure disorder. (Id.) Although Gabapentin is in the same anticonvulsant group of medications as Trileptal, "Gabapentin is mainly only used to treat certain complex partial seizures." (Id.) Dr. Moghaddam opined that plaintiff does not experience complex partial seizures, and therefore Gabapentin is not the only drug available to treat plaintiff's seizure disorder. (Id.) Dr. Moghaddam provided numerous Health Care Services Request Forms submitted by plaintiff that confirm plaintiff has been advised that Gabapentin is not the appropriate treatment for plaintiff's seizure disorder. (Dkt. No. 14-2, Ex. C, passim.)

7. Dr. Moghaddam stated that there are many different alternative medications that can be used to help control seizures. (Dkt. No. 14-1 at 3.) Dr. Moghaddam opined that Gabapentin "is not the best treatment for [plaintiff's] seizure disorder." (Id.) Dr. Moghaddam stated that the treatment plaintiff is currently receiving is appropriate, and there is no other treatment plaintiff currently requires. (Id.)

8. Dr. Moghaddam provided copies of plaintiff's Unit Health Record ("UHR") and Medical Progress Notes from plaintiff's UHR. (Dkt. No. 14-2, Exs. A & B.)

Review of the medical records demonstrate that plaintiff is receiving medical care for his seizure disorder. The records also demonstrate that plaintiff vehemently disagrees with the discontinuation of Gabapentin, and at times becomes a difficult patient when plaintiff doesn't succeed in getting the Gabapentin prescription renewed. (Dkt. No. 14-2 at 7, 18, 20, 24.) Indeed, on March 10, 2011, Nurse Practitioner Shirley Rigg noted that plaintiff "refuses to have a change in his seizure medication." (Dkt. No. 14-2 at 36.)

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual

punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  According to Farmer v. Brennan, 511 U.S. 825, 847 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'"  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Specifically, a determination of "deliberate indifference" involves two elements:  (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs.  McGuckin, 974 F.2d at 1059.

First, a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing Estelle, 429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).  Second, the nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of

1 the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must
2 purposely ignore or fail to respond to a prisoner's pain or possible medical need in order for
3 deliberate indifference to be established."  Id.  Second, there must be a resulting harm from the
4 defendant's activities.  Id.

5 However, mere differences of opinion concerning the appropriate treatment
6 cannot be the basis of an Eighth Amendment violation.  Jackson v. McIntosh, 90 F.3d 330, 332
7 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

8 The instant record demonstrates that plaintiff is receiving regular, if not frequent,
9 medical care for plaintiff's seizure disorder, and that the crux of plaintiff's claims here arise from
10 plaintiff's strongly-held opinion that he should be treated with Gabapentin, and nothing else.
11 However, a difference of opinion concerning the prescription of medications, without more, does
12 not state a cognizable civil rights claim.  None of the medical records provided demonstrate
13 deliberate indifference.  A licensed physician opined that plaintiff's present medical treatment is
14 adequate,[3] and that use of Gabapentin is inappropriate for plaintiff's seizure disorder.  Moreover,
15 medical records indicate that plaintiff's seizure activity was under control as of the week before
16 April 28, 2011.  Therefore, plaintiff has failed to demonstrate he will suffer irreparable harm if
17 the court fails to grant the motions for preliminary injunctive relief, or that plaintiff is likely to
18 succeed on the merits of the instant claim.

19 Accordingly, IT IS HEREBY ORDERED that plaintiff's motions for preliminary
20 injunctive relief (dkt. nos. 7, 10 & 13) are denied.

21 DATED:  May 25, 2011

22 _____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

23 mart0942.pi

---

[3] Plaintiff's claim concerning the allegedly erroneous prescription of Tylenol is not included in the second amended complaint.  This action is proceeding solely on plaintiff's claim concerning the discontinuation of the Gabapentin prescription in 2011 at CSP-SAC.